IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEAN LOMBARDI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-1464-O |
| | § | |
| BANK OF AMERICA, et al., | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated May 14, 2013, this case was referred for pretrial management. Before the Court are *Defendant Bank of America, N.A. and The Bank of New York Mellon's Motion to Dismiss*, filed May 24, 2013 (doc. 17), and *Plaintiff's Motion for Leave to File Sur-reply in Support of Plaintiff's Response to Defendants' Motion to Dismiss*, filed on July 2, 2013 (doc. 24). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED** in part and **DENIED** in part. The motion for leave to file a surreply is **DENIED**.

## I. BACKGROUND

This case involves the foreclosure of real property located at 16106 Chalfont Circle, Dallas, Texas 75248 (the Property). On March 4, 2013, Jean Lombardi (Plaintiff) sued Bank of America, N.A. (BOA) and the Bank of New York Mellon f/k/a the Bank of New York, as Trustee for the Certificate Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-12 (BONY) (collectively, Defendants) in state court for claims arising out of the foreclosure of the Property. (Orig. Compl. (doc. 1-3) at 2.)[1] Defendants removed the action to federal court on the basis of

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

diversity jurisdiction on April 15, 2013, and moved to dismiss the complaint a few days later.  (Rem. Notice (doc. 1) at 2; D. Mot. (doc. 5).)  On May 11, 2013, Plaintiff filed an amended complaint, and Defendants' motion to dismiss was deemed moot.  (Am. Compl. (doc. 9) and Order (doc. 16)).

In her first amended complaint, Plaintiff alleges that she purchased the Property on or about October 21, 2004, with a loan from America's Wholesale Lender (AWL) for $288,000.00.  (doc. 9 at 3.)  She executed a promissory note and a deed of trust securing the note in AWL's favor.  (D. Mot. App. (docs. 9-1; 19-2).)  Both the note and deed of trust named AWL as "Lender" and Plaintiff as "Borrower."[2]  (docs. 9-1 at 1, ¶¶ B, C; 19-2 at 1, ¶1, 12.)  The note provided that Lender could transfer the note, and that Lender or anyone who took the note by transfer was the note "holder." (doc. 19-2 at 1, ¶ 1.)  Similarly, the deed of trust stated that the note and deed of trust could "be sold one or more times without prior notice to Borrower."  (doc. 9-1 at 9, ¶ 20.)  The deed of trust also designated Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary under the deed of trust.  (*Id.* at 2, ¶ E.)  As the beneficiary under the deed of trust and Lender's nominee, MERS held legal title to the Property and could exercise any and all of the interests Borrower granted Lender, including the right to foreclose and sell the Property upon default, and to take any other action required of Lender, "including, but not limited to, releasing and canceling the deed of trust."  (*Id.* at 2–3.)  The deed of trust included a "notice" clause providing that Lender would notify Borrower of a default on the note, Borrower's right to reinstate, and Lender's acceleration of the note and invocation of the power of sale.  (*See* doc. 9-1 at 10, ¶ 22.)  Lastly, it included a "non-waiver" provision, stating among other things that any extension of the time to pay or the acceptance of partial payments by Lender did not waive "or

---

[2]  William M. Lombardi was also listed as a Borrower, but he is not a party in this action.  (*See* doc. 15-2 at 12.)

preclude the exercise of any right or remedy" under the deed of trust.  (*Id.* at 8, ¶ 12.)

Between 2006 and 2009, Plaintiff encountered financial difficulties and "participated in one repayment plan and three separate loan modifications."  (doc. 9 at 3.)  In June 2011, BOA, the loan servicer, "began notifying" her "of foreclosure proceedings."  (*Id.*)  BOA sent her a letter on March 9, 2012, advising her that a "short sale program" was "an option that could help avoid foreclosure." (*Id.* at 4.)  At that point, Plaintiff began working with "a dedicated BOA specialist" to modify her mortgage for the fourth time and avoid foreclosure and a short sale.  (*Id.* at 3–4.)

On May 4, 2012, MERS, as Lender's nominee, assigned the deed of trust to BONY.  (D. Mot. App. (docs. 9 at 3; 19-4) at 1.)  On October 25, 2012, Plaintiff submitted her modification application "for final approval" and requested an extension of the pending foreclosure sale, which was scheduled for November 6, 2012.  (*Id.* at 4.)  She called the BOA specialist on November 1 to inquire about her application and request for an extension, but was unable to reach her.  (*Id.*)

On November 5, 2012, Plaintiff "escalated" her inquiries and requested that an extension of the foreclosure sale be processed "with high priority."  (*Id.*)  Her request was denied.  (*Id.*)  On November 6, 2012, the substitute trustee sold the Property to BONY at a foreclosure sale for $291,060.00.  (doc. 19-5 at 1.)  The next day, Plaintiff appealed the foreclosure sale, but to no avail. (doc. 9 at 5.)  She now challenges the foreclosure on grounds that MERS's assignment of the deed of trust to BONY was ineffective because MERS was not the named "Lender" on the note and did not own or hold the note.  (*Id.* at 6.)  Moreover, she claims that "MERS could not establish an unbroken chain of title" and was therefore unable to assign the power of sale to other parties.  (*Id.* at 7.)  She asserts that Defendants could not foreclose on the Property because they did not own or hold the note.  (*Id.*)  Lastly, she contends that the foreclosure was improper because it was conducted

while her modification application remained pending in violation of a "Consent Judgment" between BOA and the U.S. Government dated April 4, 2012.  (*Id.* at 5.)

The first amended complaint asserts claims for violations of the Real Estate Settlement Practices Act (RESPA), the Texas Property Code (wrongful foreclosure), the Texas Debt Collection Practices Act (TDCPA), and the Deceptive Trade Practices Act (DTPA), as well as for breach of contract, unjust enrichment, negligence, negligent misrepresentation, common law fraud, suit to quiet title, and trespass to try title.  (*Id.* at 6–10, 13–21.)  Plaintiff seeks damages, attorney's fees, court costs, an accounting, and declaratory judgment.  (*Id.* at 21–23.)

On May 24, 2013, Defendants moved to dismiss the amended complaint.  (doc. 17.)  With a timely-filed response (doc. 21) and reply (doc. 23), the motion is now ripe for recommendation.

## II.  MOTION FOR LEAVE TO FILE SURREPLY

Plaintiff requests leave to file a surreply to address Defendants' contentions that (1) the first amended complaint indicates that she received all of the notices required under the deed of trust and the Texas Property Code; and (2) they did not waive their right to accelerate the note and foreclose on the Property.  (docs. 24; 24-1.)

The purpose of filing a reply "is to give the movant the final opportunity to be heard, and to rebut the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion."  *Info-Power Int'l, Inc. v. Coldwater Tech., Inc.*, No. 3:07-CV-0937-P, 2008 WL 5552245, at *8 (N.D. Tex. Dec. 31, 2008) (citation and internal quotation marks omitted). For this reason, "a court generally will not consider arguments raised for the first time in a reply brief."  *Pennsylvania Gen. Ins. Co. v. Story*, No. CIV.A.3:03-CV-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) (citations omitted).  An exception may be made, however, and leave

to file a surreply may be granted, to allow the "nonmovants . . . a chance to respond" to the movant's newly-asserted theories or evidence. *See id.* Leave to file a surreply is unwarranted, however, where the proposed surreply merely restates the arguments made in the party's initial response. *See, e.g.*, *Williams v. Aviall Serv. Inc.*, 76 Fed. App'x 534, 535 (5th Cir. 2003) (affirming the denial of a party's motion for leave to file a surreply because the surreply did not include new arguments or evidence); *Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214, at *5 (N.D. Tex. July 29, 2011) (denying a party's motion for leave to file a surreply because the proposed surreply involved no new issues).

Here, Plaintiff's proposed surreply asserts that Defendants "waived" their right to "enforce the contract via foreclosure" because they failed to send her the notices of default, opportunity to cure, and intent to accelerate, as they were required to do pursuant to the deed of trust and Chapter 51 of the Texas Property Code. (doc. 24-1 at 1–2.) She made the same arguments regarding lack of notice in her response to Defendants' motion to dismiss. (*See* doc. 22 at 15.) Since her proposed surreply merely restates the arguments she made in her response, the motion for leave to file a surreply is denied. *See Williams*, 76 Fed. App'x at 535; *Berkman*, 2011 WL 3268214, at *5.[3]

### III. RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 17.)

**A.**     **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

---

[3] Notably, the ultimate recommendation concerning the motion to dismiss would remain the same even if the surreply was considered.

granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570;

6

*accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725.  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Documents falling under these categories may be properly considered without converting the motion into a motion for summary judgment.

Here, Plaintiff has attached to her first amended complaint a copy of what she claims is the deed of trust.  (doc. 9-1.)  Because this document is attached to the complaint, it is considered part of the pleadings.  *See Katrina Canal Beaches*, 495 F.3d at 205.  Defendants have attached to their

motion what they claim are complete copies of the promissory note, MERS's assignment of the deed

of trust to BONY, the substitute trustee's deed issued to BONY at the foreclosure sale, and the

Consent Judgment between the U.S. Government and BOA.  (docs. 19-2–19-6.)  These documents

are referenced in Plaintiff's complaint and are central to her claims; they are therefore considered

part of the pleadings. *See Collins*, 224 F.3d at 498.  Conversion of the motion to dismiss into a

motion for summary judgment is unnecessary. *See id.*; *Katrina Canal Beaches*, 495 F.3d at 205.

### B.   MERS's Assignment ("Split-the-Note"/"Show-me-the-Note" Theories)

Defendants first argue that Plaintiff's contention that MERS could not assign her loan to

BONY because it was not the holder of the note has been widely "rejected by courts across the

country" and in the Fifth Circuit.  (doc. 18 at 12.)  They contend that her allegation that they "did

not have [the] capacity to foreclose" because they did not own or hold the note fails as a matter of

law because BONY became the new "mortgagee" upon MERS's assignment, and it therefore had

authority to foreclose upon Plaintiff's default and could also "authorize" BOA to foreclose on its

behalf.  (*Id.* at 13–15.)[4]

According to Plaintiff, "MERS did not hold or own the note" because the note did "not

designate MERS as the Lender and MERS was not in the note's possession."  (doc. 9 at 6–7.)  She

contends that MERS was "incapable of transferring" her loan to BONY because it "could not

---

[4] Although Defendants construe Plaintiff's contentions as being part of her "breach of contract" claim, her allegations appear to form her global theory of the case.  (*See, e.g.*, doc. 9 at 6 ("Defendants have wrongfully foreclosed on Plaintiff's property because Defendants had no authority to foreclose."); 13 (asserting a claim for "unjust enrichment" based on the allegation that "Defendants misrepresented that they had legal capacity to collect on Plaintiff's mortgage loan"); 20 (alleging that Defendants committed fraud because "MERS never owned or held the Note and could not" transfer it, therefore "any and all correspondence alleging that BONY or BOA ha[d] authority to collect mortgage payments or to foreclose [was] a false statement").)  Plaintiff's theory regarding Defendants' authority to foreclose is therefore addressed separately from the merits of her claims.

establish an unbroken chain of title." (*Id.* at 6.)  She concludes that Defendants could not foreclose because they were neither the owners nor holders of the note since MERS's assignment transferred to BONY the deed of trust, but not the note.  (*Id.* at 6–8.)

Plaintiff's allegation that MERS could not assign her loan to BONY because it held only the deed of trust and was not the owner or holder of the original note implicates the "split-the-note" theory.  *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *2 (N.D. Tex. Oct. 3, 2012).  The "split-the-note" theory states "that a transfer of a deed of trust by way of MERS 'splits' the note from the deed of trust, thus rendering both null. In order to foreclose, the theory goes, a party must hold both the note and the deed of trust." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) (citations omitted).  Similarly, her allegation that Defendants could not foreclose on the Property because they did not own or hold the note implicates the "show-me-the-note" theory.  *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *rec. adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (internal quotations omitted).

Both theories have been widely rejected by courts in Texas.  *See Martins*, 722 F.3d at 254–55. Specifically, "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*,  No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the

lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug.30, 2012, no pet.) (mem.op.) (to same effect). When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).[5]  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.

Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code Ann. § 51.002 (West 2007).  Pursuant to the Code, both "a mortgagee and [a] mortage servicer may administer a deed of trust foreclosure without production of the original note." *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam) (citing to Tex. Prop. Code §§ 51.0002, 51.0025).  A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A)–(C). A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3).  A mortgagee may be its own mortgage servicer.  *Id.*

If the mortgagee is its own mortgage servicer, it may conduct a non-judicial foreclosure sale by following the procedures set out in the Property Code.  *Martins*, 722 F.3d 255.  The mortgagee

---

[5]  The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status.  *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

need not produce the original note because its authority to foreclose is determined solely by its "relationship to the deed of trust."[6] *Kramer*, 2012 WL 3027990, at *7; *see also Martins*, 722 F.3d at 255 (explaining that possession of the note is not a prerequisite to foreclosure since a "deed of trust gives the lender as well as the beneficiary [of the deed of trust] the right to invoke the power of sale, even though it would not be possible for both to hold the note") (internal quotations omitted).[7]

A mortgage servicer may also foreclose on behalf of the mortgagee if the parties enter into a servicing agreement and provide the mortgagor with certain disclosures.  *See* Tex. Prop. Code § 51.0025.  As courts have noted, however, § 51.0025 does "not require the mortgage servicer to be the 'holder' of the Note [or] Deed of Trust or to produce the original loan documents."  *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *rec. adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy v. Chase*

---

[6] Courts have held that where MERS, a "book entry system" i.e., a "mortgagee", "is given the power of sale under the deed of trust, then MERS has the power of sale."  *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012).  In that situation, "MERS also has the authority to transfer the power of sale *by assigning the deed of trust*." *Id.* (emphasis added); *accord Enis*, 2012 WL 4741073, at *2 ("Because under the deed of trust MERS held the power of sale, BOA received that power when it was assigned the deed of trust.").  Moreover, courts in this Circuit have also held that the transfer of the note or deed of trust automatically transfers the other  because they "must be read . . . and construed together as a single instrument." *Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *rec.adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Islamic Ass'n of DeSoto, Texas, Inc.v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) ("[T]he transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (internal quotations omitted); *Kramer*, 2012 WL 3027990, at *5 (same) (listing cases).  Accordingly, Plaintiff's claim that MERS could not assign the deed of trust to BONY apart from the note fails for this additional reason.

[7] For instance, § 51.002(d) of the Tex. Prop. Code requires the mortgage servicer to provide to the debtor notice of default and intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days.  *See* Tex. Prop. Code § 51.002(d). If the mortgage servicer invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *See id.* § 51.002(b).

*Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (explaining that § 51.0025 "contemplates that someone other than the holder of the original [loan documents] may lawfully foreclose on the security interest").

Here, MERS was the original mortgagee because it is a "book entry system" and was the "beneficiary" of the deed of trust. *See* Tex. Prop. Code Ann. § 51.0001(4)(A)–(B); (*see also* doc. 9-1 at 2). Upon MERS's assignment of the deed of trust on May 4, 2012, BONY became the new "mortgagee" because it was the new beneficiary of the deed of trust and "the last person to whom the security interest ha[d] been assigned of record." *See* Tex. Prop. Code § 51.0001(4)(A),(C); (*see also* doc. 19-4 at 1). As the new mortgagee, BONY had all of the rights that Plaintiff granted Lender under the deed of trust, including the power of sale on default. *See id.*; (*see also* doc. 9-1 at 2–3). BONY could exercise that right without having to produce the original promissory note. *See Martins*, 722 F.3d at 255; *Asonibe v. Flagstar Bank, FSB*, No. 3:12-CV-2113-M BH, 2013 WL 1828842, at *6 (N.D. Tex. Apr. 5, 2013), *rec. adopted*, 2013 WL 1831747 (N.D. Tex. Apr. 30, 2013) ("As the new mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without having to produce the note or deed of trust."). BONY could also authorize BOA to service Plaintiff's mortgage and foreclose on the Property on its behalf, so long as they established a servicing agreement and gave Plaintiff proper notice. *See* Tex. Prop. Code § 51.0025. As the mortgage servicer, BOA could foreclose on the Property without having to own or hold the original promissory note. *See Sawyer*, 2010 WL 996768, at *3.

In sum, Plaintiff's allegation that Defendants could not foreclose on the Property because MERS had no interest in the note that it could assign to BONY cannot support a claim against them as a matter of law. *See Enis*, 2012 WL 4741073, at *2. Her related theory that Defendants could

12

not foreclose because they did not own or hold the note is likewise unavailing.  *See Martins*, 722

F.3d at 255. Notably, Plaintiff does not allege that Defendants could not foreclose because they were

neither the mortagee nor mortgage servicer, or because there was no default on the loan.  She states

that "BOA was the loan servicer and agent for BONY," and that she defaulted on her loan payments

as early as August 2006.  (*See* doc. 9 at 3–5.)  To the extent Plaintiff premises any of her claims for

relief on her "split-the-note" or "show-me-the-note" theories, the claims should be dismissed under

Rule 12(b)(6) for failure to state a claim.

## C.  <u>Breach of Contract</u>

Defendants move to dismiss Plaintiff's claim for breach of contract, which is based on her

assertions that Defendants: (1) failed to send her the requisite notices under Chapter 51 of the Texas

Property Code and paragraph 22 of the deed of trust; and (2) foreclosed on the Property after having

waived their right to do so.  (doc. 18 at 12–20.)

The essential elements of a breach of contract claim in Texas are:  "(1) the existence of a

valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Hurd v. BAC

Home Loans Servicing, LP*, 880 F. Supp. 747, 759 (N.D. Tex. 2012) (citations omitted).

### 1.  *Breach of the Deed of Trust (Failure to Provide Notice)*

According to Defendants, Plaintiff's breach of contract claim based on their purported failure

to send her the requisite notices fails and should be dismissed given her concession that she

"received notices about foreclosure."  (doc. 18 at 16.)

Plaintiff points to paragraph 22 of the deed of trust, which required Lender "to provide []

Borrower" with certain notices.  (doc. 9 at 10.)  Specifically, pursuant to paragraph 22, Lender was

required to provide Borrower with two notices.  The first notice would include four items: (1) that there was a "default" on the note; (2) "the action required to cure the default"; (3) the date by which to cure the default; and (4) the statement that failure to cure would result in "acceleration" of the note and foreclosure of the Property.  (doc. 9-1 at 10, ¶ 22.)  If Lender invoked the power of sale, Lender would give Borrower a second notice providing the details about the foreclosure process, such as "the time, place, and terms of [the] sale."  (*Id.*)  Lender would publically "post" the foreclosure notice and file it with the County Clerk's office, and would also send Plaintiff a copy of the notice via certified mail.  (*Id.*)

Plaintiff alleges that "the acceleration and foreclosure of Plaintiff's Property was improper" because BOA failed to comply with these notice requirements.  (doc. 9 at 10–1.)  She claims she suffered damages "including mental anguish, court costs, and reasonable and necessary attorney's fees," as a result of Defendants' breach.  (*Id.* at 13.)  The first amended complaint states that "[i]n June 2011, BOA began notifying Plaintiff . . . of foreclosure proceedings."  (*Id.* at 3.)  From March to October 2012, Plaintiff communicated with the BOA specialist to obtain a fourth modification to avoid foreclosure and a short sale.  (*Id.* at 4.)  She "ignore[d] the foreclosure notices" because she "believe[d] she was qualified for a loan modification" and Defendants "would not foreclose" while her application was pending.  (*Id.* at 19.)  Her allegations fail to raise a reasonable inference that Defendants did not send her the second requisite notice, i.e., the notice regarding the foreclosure proceedings.  Taken as true and seen in the light most favorable to Plaintiff, however, her allegations do state a plausible claim that Defendants breached the deed of trust by failing to send her the first required notice to inform her of a default, her opportunity to cure, and Lender's right to accelerate and foreclose if Plaintiff failed to cure the default.  (*See* doc. 9-1 at 10, ¶ 22.)  Accordingly, her

14

breach of contract claim based on Defendants' purported breach of the deed of trust should be allowed to proceed, and Defendants' motion on this basis should be denied.

### 2.   *Defendants' Waiver of their Right to Accelerate and Foreclose*[8]

Defendants construe the first amended complaint as asserting a breach of contract claim based on Plaintiff's contention that they "waived" their right to accelerate and foreclose by postponing the foreclosure sale on several occasions while BOA reviewed Plaintiff's modification requests. (doc. 18 at 16.)  They move to dismiss the claim on grounds that they did not waive their rights of acceleration and foreclosure because BONY never agreed to modify the original loan documents, which expressly granted Lender the power of sale on Borrower's default. (*Id.* at 16–17); (*see also* doc. 9-1 at 2–3).[9]

Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012) (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)).  To prove waiver, a party must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.*  If waiver is based on inferences, the plaintiff "must show conclusive evidence that the opposite party 'unequivoc[ally] manifested' its intent to no longer assert its claim." *Enis*, 2012 WL 4741073, at *2 (citations omitted).

---

[8]  Plaintiff titles this claim "anticipatory breach," but her allegations implicate only "waiver," which is a different legal doctrine. (*See* doc. 9 at 10–13.)  Accordingly, the allegations are addressed as a waiver claim.

[9]  Defendants also contend that Plaintiff's waiver argument is barred by the statute of frauds. (doc. 18 at 18.)  Because Plaintiff fails to state a plausible waiver claim, it is unnecessary to reach this additional argument.

Here, Plaintiff claims that by "intentionally and repeatedly postponing" the foreclosure while her loan modification applications were under review, "Defendants established a course of performance indicating that [they] would not foreclose . . . until the [October 2012] application for her loan modification had been determined." (doc. 9 at 12.) Because they "temporarily waived their right to foreclose," BOA's acceleration of the note and foreclosure of the Property constituted a breach of the lending contract. (*Id.* at 11–13.)

The deed of trust expressly provided that: "[a]n extension of the time for payment or modification of amortization" of the amount due on the note would "not operate to release the liability of Borrower." (doc. 9-1 at 8.) It also stated that "[a]ny forbearance by Lender in exercising any right or remedy" under the deed of trust would "not be a waiver of or preclude the exercise of [that] right or remedy." (*Id.*) Assuming for purposes of this motion that BOA had in the past delayed the foreclosure sale while it reviewed Plaintiff's modification applications, such a temporary forbearance, as opposed to an actual cancellation, of Lender's rights to accelerate and foreclose cannot reasonably be said to be "intentional conduct" that was "inconsistent" with invoking those rights at a later time. *See Ulico Cas. Co.*, 262 S.W.3d at 778. Ultimately, in light of the deed of trust's express non-waiver provision, Plaintiff's allegations fail to state a plausible claim that Defendants waived their right to accelerate the note and foreclose on the Property by considering, and at times even granting, Plaintiff's applications for a loan modification. *See Benavides v. EMC Mortgage Corp.*, No. CIV.A. 3-12-46, 2013 WL 416195, at *5 (S.D. Tex. Jan. 31, 2013) (holding that the non-waiver provision in the deed of trust "ma[de] clear that [the lender's] alleged consideration of Plaintiffs for a modification was not intended to function as a waiver and was not inconsistent with proceeding with foreclosure"); *Enis*, 2012 WL 4741073, at *2 (holding that "the

16

deed of trust explicitly counter[ed] any inference that BOA waived the right to foreclose" where the deed of trust's non-waiver provision included identical language to the provision at issue here). Plaintiff therefore fails to plead a viable breach of contract claim on this basis.

## D.   **Negligence**

Defendants next move to dismiss Plaintiff's negligence claim on grounds that "she cannot show that Defendants owed her a legal duty."  (doc. 18 at 23.)[10]

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

A legal duty is a general obligation imposed by law "apart from and independent of promises made and . . . the manifested intentions of the parties, to avoid injury to others." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991).  To establish a legal duty between contracting parties, the plaintiff must generally "show there is a special relationship between [them]." *Lowe v. ViewPoint Bank*, No. 3:12-CV-1725-G BH, 2013 WL 5273122, at *10 (N.D. Tex.

---

[10] Defendants first argue that Plaintiff's claims for negligence, negligent misrepresentation, and fraud are barred by the economic loss doctrine.  (doc. 18 at 20–21.)  "The economic-loss rule bars tort actions based solely on recovery of the loss or damage to the subject of a contract."  *New Century Fin., Inc. v. Olympic Credit Fund, Inc.*, 487 F. App'x 912, 915 (5th Cir. 2012) (citation omitted).  Courts consider: (1) whether the claim is for breach of a duty created by contract, as opposed to a duty imposed by law; and (2) the nature of the alleged injury.  *Hurd*, 880 F. Supp. 2d at 763 (citation omitted).  Notably, courts have held that even absent a special relationship between contracting parties, there is always a duty to correct one's own prior false or misleading statements.  *See e.g., Int'l, Inc. v. J.C. Penney Corp., Inc.*, No. Civ. A. 304-CV-1265-M, 2005 WL 1704793, at *6 (N.D. Tex. July 19, 2005) (citing *Trustees of the Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994)).  In addition, "parties to a contract have an independent legal duty not to commit the intentional tort of fraud."  *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. CIV. A. 1:07-CV-111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009).  Plaintiff asserts that she has suffered damages over and above the subject matter of the contract, including mental anguish and emotional distress as a result of Defendants' actions.  (doc. 9 at 15.)  Because the economic loss doctrine may not bar Plaintiff's tort claims, they are addressed on the merits.

Sept. 18, 2013) (citation omitted).   Courts have held that "there is no special relationship between [a] mortagor and a mortgagee" imposing a legal duty on the mortgagee for purposes of a negligence claim.  *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013) (citing *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2010 WL 1026968, at *8 (E.D. Tex. Feb. 16, 2010), *rec. adopted*, 2010 WL 1026969 (E.D. Tex. Mar. 17, 2010) ("[T]here is no duty of care that arises that would support a claim of gross negligence by the Plaintiff against Defendants, as any duty to act in good faith is based upon the Deed of Trust.")).

Plaintiff asserts that "BOA undertook the performance of servicing [her] mortgage loan, and by negligently performing that contract, it is liable in tort."  (doc. 9 at 14.)  Her allegation that BOA "negligently" performed the contract is a legal conclusion that is not entitled to any deference.  *See Twombly*, 550 U.S. at 555 (to state a claim for relief, a plaintiff must provide "more than labels and conclusions").  Her negligence claim ultimately fails as a matter of law because Defendants, as the mortgagee and mortgage servicer, owed her no duty of care outside of their contractual obligations.  *See Milton*, 508 F. App'x at 329; *Burnette*, 2010 WL 1026968, at *8.

## E.    <u>Negligent Misrepresentation</u>

According to Defendants, Plaintiff fails to state a plausible claim for negligent misrepresentation because her allegations fail to raise a reasonable inference that BOA ever assured her that the foreclosure sale would be postponed.  (doc. 18 at 22.)  To the extent the claim is based on any promise by part of BOA to modify the mortgage, Defendants contend that the claim fails because promises of future conduct are not actionable for negligent misrepresentation.  (*Id.* at 23.)

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a

pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Chance v. Aurora Loan Services, L.L.C.*, No. 3:11-CV-1237-BH, 2012 WL 912939, at *5 (N.D. Tex. Mar. 19, 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) and *Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied)).  The false information complained of "must be a misstatement of an existing fact rather than a promise of future conduct." *Id.*; *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625–26 (N.D. Tex. 2011).

Here, Plaintiff alleges that "Defendants repeatedly postponed [the] foreclosure date while her loan modification" applications were processed.  (doc. 9 at 19.)  "Through this conduct, Defendants" purportedly "misled [her] into believing that the foreclosure date would be postponed for the month of November because [her] loan modification was still being reviewed." (*Id.*).  Since they "failed to use reasonable care" in communicating the status of her application, she "ignore[d] the foreclosure notices" and was damaged as a result.  (*Id.*)  In the "facts" section of the complaint, she states that the BOA specialist explained "that a loan modification *may be available* as an alternative to a short sale."  (*Id.* at 4) (emphasis added).  While the application process was underway, Plaintiff "requested" and was "granted" several extensions of the foreclosure date.  (*Id.*)  The day before the foreclosure sale took place, she again "requested" another extension "with high priority."  (*Id.*)  Her request was denied.  (*Id.* at 5.)

Seen in the light most favorable to Plaintiff, her allegations fail to raise a reasonable inference that Defendants told her the foreclosure sale would be postponed or her application for a

modification would be approved.  If she "ignored the foreclosure notices" because her application for a loan modification remained pending, the allegations fail to state a plausible claim that her reliance was justifiable.  Moreover, to the extent her claim is based on any promise by part of BOA to modify her loan or postpone the foreclosure sale, the claim fails because promises of future conduct are not actionable for negligent misrepresentation.  *See Milton*, 2013 WL 264561, at *1–2 (affirming dismissal of negligent misrepresentation claim that was based on the defendant's purported statement "that the Property would not be foreclosed upon while his [HAMP] application was pending" because "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort"); *Chance*, 2012 WL 912939, at *5 (dismissing negligent misrepresentation claim where the alleged misrepresentation was that "the foreclosure process would not proceed").  Plaintiff's claim for negligent misrepresentation should be dismissed for failure to state a claim.

## F.   **Common Law Fraud**

Defendants next seek dismissal of Plaintiff's fraud claim which is based on her allegations that Defendants lacked authority to foreclose.  (doc. 18 at 22.)  They argue that the claim fails because both BONY and BOA "were authorized to take the actions" they took "regarding Plaintiff's loan and the foreclosure of the Property securing the loan."  (*Id.*)

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.*

*v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).[11]

Plaintiff's claim for common law fraud is based on Defendants' purported lack of authority to foreclose on the Property.  (*See* doc. 9 at 19–20.)  She contends that Defendants sent her "several letters" stating that "BONY was the current mortgagee and that BOA had the authority to service the loan."  (*Id.* at 20.)  She claims the letters were false because MERS's assignment was invalid and did not transfer any rights to BONY.  (*Id.*)  The false statements were made "recklessly without any knowledge of the truth," and in reliance, she made all "her mortgage payments" to Defendants.  (*Id.*)

As discussed, Plaintiff's allegation that MERS's assignment was invalid is based on a legally invalid theory.   BONY became the new mortgagee the assignment and could foreclose upon Plaintiff's default.  *See* Tex. Prop. Code §§ 51.0001(4)(A),(C); *Asonibe*, 2013 WL 1828842, at *6.  BONY could also authorize BOA to service Plaintiff's loan and foreclose on the Property on its behalf.  *See* Tex. Prop. § 51.0025; *Sawyer*, 2010 WL 996768, at *3.  Accordingly, Plaintiff's claim for common law fraud fails should be dismissed under Rule 12(b)(6) for failure to state a claim.

## G.     TDCPA

Defendants move to dismiss Plaintiff's claims under the TDCPA for failure to state any facts indicating that they made any false statements, misrepresented the character or extent of the mortgage, assessed unauthorized fees, or took or threatened to take any action prohibited by law. (doc. 18 at 24–25.)

---

[11]   Rule 9(b) requires the plaintiff to state a fraud claim with "particularity."  *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.  *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted).

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012). The Act defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection." Tex. Fin. Code Ann. § 392.001(6)(West 2006). "Debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). Debt collection can include "actions taken in foreclosing real property." *Sanghera v. Wells Fargo Bank*, *N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 5 (N.D. Tex. Jan. 20, 2012). Defendants' foreclosure may therefore fall within the purview of the TDCPA. *See Sanghera*, 2012 WL 555155, at *7.

### 1.    *Section 392.304(a)(19): Misrepresentations and Deceptive Means*

In debt collection or obtaining information concerning a consumer, § 392.304(a) prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs" certain prohibited practices. Tex. Fin. Code Ann. § 392.304(a) (West 2004). Subsection 392.304(a)(19) "operates effectively as a 'catch-all' provision, prohibiting a debt collector from 'using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.'" *Sanghera*, 2012 WL 555155, at *8. For a party's statement to constitute a misrepresentation under the TDCPA, that party "must have made a false or misleading assertion." *Id.* at *9.

Plaintiff argues that Defendants represented that "she would be considered" for a loan

22

modification "as long as she continued to supply the [] requested information." (doc. 9 at 16.)  After Plaintiff spent several months "pursuing" a modification, "Defendants unexpectedly and wrongfully foreclosed." (*Id.*)  She claims this conduct was deceptive because it led her "to believe [that] if she continued following Defendants' directions, her home would not be foreclosed upon." (*Id.*) In the "facts" section of the complaint, however, she states that the BOA specialist told her that a "loan modification *may be available* as an alternative to a short sale" and that she was "*eligible to apply*." (*Id.* at 4) (emphasis added).  Plaintiff does not allege that these statements were "false or misleading assertions," which is required to state a claim under § 392.304(a)(19).  *See Sanghera*, 2012 WL 555155, at *9.  In light of her own pleadings, Plaintiff fails to raise a reasonable inference that Defendants engaged in any misrepresentation or deception in violation of § 392.304(a)(19).  This claim is therefore subject to dismissal.

### 2.      *Section 392.304(a)(8): Misrepresentation of the Character or Extent of the Debt*

Subsection 392.303(a)(8) prohibits a debt collector, in relevant part, from "misrepresenting the character, extent, or amount of a consumer debt."  Tex. Fin. Code Ann. § 392.304(a)(8) (West 2005).

Plaintiff essentially argues that Defendants misrepresented the character and extent of her loan by leading her to believe that she would be considered for a loan modification and that the foreclosure sale would be postponed while her modification application was reviewed.  (doc. 9 at 16.)  Even though she spent several months working with the BOA specialist to modify her loan, she claims, Defendants "unexpectedly and wrongfully foreclosed" on the Property. (*Id.*)  As with her previous claim, Plaintiff fails to raise a reasonable inference that Defendants misled her about the status of her modification application or the pending foreclosure.  According to her own complaint,

the BOA specialist told her that a modification program was "available" and she was "eligible to apply," not that her application would be *approved*.  (*Id.* at 4.)  In addition, the previous extensions of the foreclosure sale were "requested" and approved, not automatically granted.  Plaintiff's statement that she *believed* she would be *considered* for a modification if she submitted the requisite paperwork fails to show any misrepresentation by Defendants' part.  Lastly, in light of her own statements that she was aware of the November 6, 2012 foreclosure sale (*see id.*) and that she "ignored the foreclosure notices" (*see id.* at 19), she fails to raise a reasonable inference that Defendants foreclosed "unexpectedly."  Accordingly, she fails to state a plausible claim under subsection 392.303(a)(8), and this claim should be dismissed.  *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (affirming dismissal of claim under § 392.304(a)(8) where the plaintiffs "always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; (iii) and that they had defaulted," and nothing in their "allegations suggest[ed]" that the lender "led them to think differently with respect to the character, extent, amount, or status of their debt").

### 3.      *Subsection 392.301(a)(8): Actions Prohibited by Law*

Subsection 392.301(a)(8) provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ . . . threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006).

Plaintiff asserts that the foreclosure was an action prohibited by law because: (1) it violated the requirement in the Consent Judgment between the U.S. Government and BOA that BOA refrain from foreclosing on the Property until her modification application was determined; and (2) BONY failed to file the required "bond" with the secretary of state before engaging in "debt collection"

practices.[12]  (doc. 9 at 17.)

a.      Violation of the Consent Judgment

According to Defendants, Plaintiff cannot pursue any cause of action or request any type of relief based on her allegation that the foreclosure violated the Consent Judgment because she "lacks standing to enforce" its provisions.  (doc. 18 at 29.)

"It is well settled that 'a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even [if] they were intended to be benefited by it." *Choe v. Bank of Am., N.A.*, No. 3:13-CV-0120-D, 2013 WL 3196571, at *4 (N.D. Tex. June 25, 2013) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975)).  For this reason, courts have held that mortgagors lack third-party standing[13] "to enforce a consent decree that banks have entered into with the government."  *Bagala v. Bank of Am.*, No. CIV.A. H-13-0160, 2013 WL 4523562, at *2 (S.D. Tex. Aug. 27, 2013) (citing cases); *Holloway*, 2013 WL 1187156, at *14 ("Plaintiff does not allege that he was an intended third-party beneficiary to the Consent Judgment, and fails to allege any facts or point to any provision of the Consent Judgment that shows a clear and express intent on part of the contracting parties to make him and other borrowers thirdparty beneficiaries.")

---

[12]  Defendants do not address this aspect of Plaintiff's claim under § 392.301(a)(8).  (*See* doc. 18.)

[13]  In Texas, "establishing a third-party beneficiary claim is a difficult burden; there is a presumption against the finding and enforcement of third-party beneficiary agreements."  *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184-G BH, 2013 WL 1187156, at *14 (N.D. Tex. Feb. 26, 2013), *rec. adopted*, 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013) (citation omitted).  A third-party may enforce a contract only "when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." *Strange v. Flagstar Bank, FSB*, No. 3:11–CV–2642–B, 2012 WL 987584, at *2 (N.D. Tex. Mar.22, 2012) (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).  If the contract does not show a clear and express intent to benefit the third party, or if it otherwise "confers only an indirect, incidental benefit to the third party," then the third party cannot enforce the contract.  *Strange*, 2012 WL 987584, at *2 (citing *Tawes*, 340 S.W.3d at 425).

Here, Plaintiff claims that the foreclosure was an action prohibited by law because it violated the Consent Judgment's requirement that BOA refrain from foreclosing while her modification application was pending.  (doc. 9 at 17.)  She does not claim to be a party to the Consent Judgement. She also fails to identify a specific provision granting standing to borrowers such as Plaintiff to enforce its provisions.  The Consent Judgment expressly states that an enforcement action may be brought only by a party to it or by the "Monitoring Committee."  (doc. 19-6 at 22–23, § J, ¶2.) Lastly, Plaintiff does not allege or assert any facts indicating that this private agreement constituted legal authority governing foreclosure proceedings in Texas.  Accordingly, she fails to state a plausible TDCPA claim based on her allegation that Defendants violated § 392.301(a)(8) by foreclosing in contravention of the Consent Judgment.  *See Holloway*, 2013 WL 1187156, at *9, *14 (dismissing claim under § 392.301(a)(8) where the plaintiff was not an intended third-party beneficiary and he did "not allege any facts showing that . . . the Consent Judgment constituted legal authority governing foreclosure proceedings").  This aspect of Plaintiff's § 392.301(a)(8) claim should therefore be dismissed for failure to state a claim.

   b.   BONY's Alleged Failure to Pay the Requisite Bond

The TDCPA requires "[t]hird-party debt collectors" to obtain a $10,000 "surety bond" from an authorized surety company and file a copy with the secretary of state prior to engaging in debt collection.  Tex. Fin. Code Ann. § 392.001 (West  2006).  The TDCPA tracks the definition of "third-party debt collector" of the Federal Debt Collection Practices Act (FDCPA).  *See id.* § 392.001(7) ("Third-party debt collector means a debt collector, as defined by 15 U.S.C. Section 1692a(6)" of the FDCPA).  The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which

26

is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6) (West 2011). Section 1692a(6) expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was *not in default* at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii) (emphasis added). Courts have therefore held that "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned.*" *CA Partners v. Spears*, 274 S.W.3d 51, 79 (Tex. App.—Houston[14th Dist.] 2008, pet. denied) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis added). In short, "[i]f a debt is in default at the time the assignee acquires his interest in the debt, he is a 'third-party debt collector' within the contemplation of [] section 392.101(a) of the [TDCPA]" *Adams v. Bank of Am.*, No. 4:10-CV-709, 2011 WL 5080217, at *7 (E.D. Tex. Oct. 26, 2011), *aff'd*, 475 F. App'x 526 (5th Cir. 2012).

Plaintiff alleges that her mortgage was in default when MERS assigned it to BONY. (doc. 9 at 3.) She claims that "BOA was the loan servicer and agent for BONY" during the relevant time period. (*Id.*) BONY purportedly failed to post a bond as required under § 392.001 before engaging in debt collection activities, including foreclosing on the Property. (*Id.*) She concludes that since neither BONY nor BOA were "authorized to collect" on her mortgage, the foreclosure was an action "prohibited by law." (*Id.* at 17.) Taken as true and seen in the light most favorable to Plaintiff for purposes of this motion, her allegations state a plausible claim that Defendants violated § 392.001. *See Enis*, 2012 WL 4741073, at *7 ("[The plaintiff's] allegation that BOA has not obtained a surety bond, taken as true, states a plausible claim that BOA violated § 392.101."). Accordingly, this

27

aspect of Plaintiff's claim under § 392.301(a)(8) should be allowed to proceed.

### 4.    Subsection 392.303(a)(2): Collection of Unauthorized Charges

During debt collection, § 392.303(a)(2) prohibits a debt collector from using "unfair or unconscionable means that employ" "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest, or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(a)(2) (West 2005).

As discussed, Plaintiff states a plausible claim that the foreclosure was unauthorized by law because BONY failed to file the requisite bond before engaging in debt collection activities. She further argues that since the "foreclosure was improper," all of the "fees incurred as a result of the foreclosure were unauthorized." (doc. 9 at 17.) These allegations raise a reasonable inference that the fees Defendants violated § 392.303(a)(2). Defendants' motion to dismiss Plaintiff's claim under § 392.303(a)(2) should therefore be denied, and the claim should be allowed to proceed.

## H.    DTPA

Defendants construe the first amended complaint as asserting a claim under the "tie-in" provision of the DTPA for alleged violations of the TDCPA. (doc. 18 at 20.) They argue that the claim fails because Plaintiff "is not a consumer under the [DTPA]." (Id. at 21.)

The TDCPA provides: "A violation of this chapter is a deceptive trade practice under [Tex. Bus. Com. Code § 17.50(h)], and is actionable under that subchapter." Tex. Fin. Code Ann. § 392.404(a) (West 2006). In turn, § 17.50(h) of the DTPA, grants a private right of action under the DTPA to a claimant seeking to recover for violations of the TDCPA. *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2013 WL 3789830, at *12 (N.D. Tex. July 22, 2013) (citation

28

omitted); *see also* Tex. Bus. & Com. Code § 17.50(h).  To succeed on a tie-in claim, however, "the claimant must show that he is a 'consumer' as defined in the DTPA."  *Id.*; *see also Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 28 (5th Cir. 2010) (per curiam) (holding that the DTPA "tie-in" provision "does not exempt [] claimants from proving consumer status" under the DTPA).

The DTPA defines "consumer" in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services."   Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007).  To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint."  *Hurd*, 880 F. Supp. 2d at 765  (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, (Tex. 1980)).

"A mortgagor qualifies as a consumer under the DTPA," however, "if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint."  *Miller*, 726 F.3d at 724–25 (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Riverside Nat'l Bank*, 603 S.W.2d at 175).  Nevertheless, "subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'goods or services' element of the DTPA." *Swim*, 2012 WL 170758, at * 6 (citation omitted).  This is because a "modification is akin to refinancing in that *it is not sought for the acquisition of a good or service*, but rather to finance an existing loan on previously acquired property."  *Miller*, 726 F.3d at 725 (emphasis added).

Here, Plaintiff seeks recovery under the DTPA for Defendants' alleged violations of the

TDCPA, but she does not allege or assert any facts to indicate she is a consumer under the DTPA. (*See* doc. 9 at 17–18.)   According to her own allegations, she is not a consumer because her objective was not to seek or acquire the Property with a new mortgage from BONY or BOA, but rather, to modify her existing loan.   (*See id.* at 3–5.)   Her DTPA tie-in claim therefore fails and should be dismissed.   *See Miller*, 726 F.3d at 725; *Hurd*, 880 F. Supp. 2d at 765–66.

## I.   RESPA

Defendants urge dismissal of Plaintiff's claim under RESPA, which is based on her allegation that they failed to notify her of the change in mortgage servicers.   (doc. 18 at 27.)   They argue that she "does not plead that servicing of the Loan was transferred from [AWL] to [BOA]" or that she suffered any damages as a result of Defendants' purported failure to issue notice.   (*Id.*)

Section 6 of RESPA imposes two notice requirements in connection with all "federally related" mortgage loans: (1) at the time of the credit application, a lender must disclose to the borrower that the loan servicing may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding"; and (2) a "transferor" and a "transferee" mortgage servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan."   12 U.S.C.A. § 2605(a)-(c) (West 2011).   To recover against a lender or mortgage servicer that fails to comply with these requirements, the plaintiff   "must allege actual damages resulting from the alleged RESPA violation."   *Bassie v. Bank of Am., N.A.*, No. 4:12-CV-00891, 2012 WL 6530482, at *5 (S.D. Tex. Dec. 13, 2012); *see also* 12 U.S.C.A. § 2605(f)(1)(A).   Alternatively, a court may award up to $2,000 in statutory damages if the defendant engaged in "a pattern or practice of noncompliance."   *See* 12 U.S.C.A. § 2605(f)(1)(B); *Bassie*, 2012 WL 6530482, at *5.

Plaintiff complains that BOA violated §§ 2605(b)–(c) of RESPA because it "never notified

[her] that it had assumed servicing rights from [AWL]." (doc. 9 at 6.) In other sections of the complaint, however, she states that BOA was the loan servicer "at all times," and that Defendants sent her "several letters alleging that BONY was the current mortgagee and that BOA had the authority to service the loan." (*Id.* at 3, 20.) In light of her own allegations, she fails to raise a reasonable inference that Defendants failed to notify her of a change in mortgage servicers. Moreover, she does not allege that she suffered actual damages as a result of Defendants' purported failure to issue notice. Neither does she state that Defendants engaged in a "pattern or practice of noncompliance," thereby subjecting them to statutory damages under §2605(f)(1)(B). Her RESPA claim should therefore be dismissed. *See Kareem v. Am. Home Mortgage Servicing, Inc.*, 479 F. App'x 619, 620 (5th Cir. 2012) (finding that the plaintiff could not recover under §§ 2605(a)-(c) because, "even if [the Court] assume[d] that he did not receive the notice, he [did] not explain what actual damages he suffered") (citing to §§ 2605(f)(1), 3500.21(f)(1)(i)).

**J.      Superior Title Claims (Quiet Title and Trespass to Try Title)**

According to Defendants, "Plaintiff's allegations fail to meet" the pleading standards under *Twombly* and *Iqbal*, and therefore "each of her claims against Defendants" should be dismissed. (doc. 18 at 12.) Regarding her superior title claims, they argue that the claims fail because "Defendants have demonstrated that any claim by them to the Property is valid and enforceable under the terms of the Deed of Trust" and that the complaint "does not identify any facts that establish Plaintiff's superior title to the Property." (*Id.* at 28.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest

equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 767 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2000).  This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted).  To prevail, a plaintiff must either: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Hurd*, 880 F. Supp. 2d at 767 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)).  As with a suit to quiet title, the plaintiff "must recover upon the strength of his own title and not the weakness of the defendant's title." *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343

S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Here, Plaintiff alleges that Defendants "impermissibly" declared her "a tenant at sufferance in the Property in violation of state statutes and [the] constitution." (doc. 9 at 21.) She seeks to quiet her title to and obtain possession of the Property. (*Id.*) The only allegation in the complaint supporting her claims for quiet title and trespass to try title is her statement that she purchased the Property in October 2004. (*Id.* at 3.) She still fails to plead any facts giving rise to a reasonable inference that she has superior title vis-à-vis Defendants. As discussed, MERS's assignment effectively transferred all of Lender's rights to BONY, including the power of sale on Plaintiff's default. BONY could also permit BOA to service Plaintiff's mortgage and foreclose on its behalf. Given the allegation that the loan was in default, the complaint fails to raise a reasonable inference that Defendants' claim to the Property was invalid or unenforceable. Accordingly, Plaintiff's claims for quiet title and trespass to try title are also subject to dismissal.[14]

## K.    Failure to Provide Notice (Wrongful Foreclosure)

As noted, Defendants contend that all of Plaintiff's claims are subject to dismissal because her allegations do not meet the pleading standards under *Twombly* and *Iqbal*. (doc. 18 at 11.) They also argue that Plaintiff's contention that they did not send her the requisite foreclosure notices under the Tex. Prop. Code cannot support any claim for relief in light of her allegation that she "received [those] notices." (*Id.* at 16.)

Plaintiff's contentions that "Defendants failed to send" her the requisite notices under

---

[14] Plaintiff does not allege that she has lost possession of the Property to Defendants; she states that "Defendants are *attempting to evict* her." (doc. 9 at 5) (emphasis added). Her trespass to try title claim also fails for this additional reason. *See Hurd*, 880 F. Supp. at 767 ("Since Plaintiff has failed to allege that she has lost possession of the property, her claim for trespass to try title fails and should be dismissed with prejudice.").

§§ 51.002(b),(d) of the Texas Property Code (doc. 9 at 8–9) assert a wrongful foreclosure claim.[15]

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd*, 880 F. Supp. 2d at 766 (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect." *Biggers v.*

---

[15] To conduct a lawful foreclosure in Texas, a lender "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law." *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citation omitted). The Texas Property Code requires a lender to provide to the debtor notice of default and intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code Ann. § 51.002(d) (West 2013). If the lender invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *Id.* § 51.002(b). The Code provides that "[s]ervice of a notice under [§ 51.002] by certified mail is complete when the notice is deposited in the [U.S.] mail, postage prepaid and addressed to the debtor at the debtor's last known address." Tex. Prop. Code Ann. § 51.002(e). Pursuant to § 51.002(e), courts have concluded that constructive notice, as opposed to actual notice, satisfies the notice requirements. *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 856 (5th Cir. 2009) (per curiam); *Munoz v. HSBC Bank USA, N.A.*, No. CIV.A. H-12-0894, 2013 WL 265982, at *7 (S.D. Tex. Jan. 22, 2013).

*BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Plaintiff contends that "Defendants failed to send [her] proper notices" as required by § 51.002 of the Texas Property Code.  (doc. 9 at 9.)  She claims she "never received" a notice of default and right to cure as provided by § 51.002(d).  (*Id.*)  She was purportedly "not given proper" notice of "any acceleration and foreclosure" under § 51.002(b).  (*Id.*)  In the "facts" section of the complaint, she states that "BOA began notifying [her] . . . of foreclosure proceedings" in June 2011.  (*See id.* at 3.)  Elsewhere she states that she "ignored the foreclosure notices" because BOA had modified her mortgage in the past and had postponed the foreclosure sale while her application was reviewed.  (*Id.* at 19.)  As with her breach of contract claim, her allegations fail to raise a reasonable inference that Defendants did not send her the notice of foreclosure, as they were required to do under Tex. Prop. Code § 51.002(b).  Her allegations do state, however, a plausible claim that Defendants failed to send her the required notice under § 51.002(d) informing her of a default, Lender's intent to accelerate, and her opportunity to cure the default within a minimum of 20 days.  *See* Tex. Prop. Code § 51.002(d).  Accordingly, her wrongful foreclosure claim for failure to provide notice under § 51.002(d) of the Tex. Prop. Code should be allowed to proceed.

## L.     Unjust Enrichment

Defendants move to dismiss the first amended complaint in its entirety on grounds that "Plaintiff has failed to state a claim for relief as to any of her claims."  (doc. 18 at 9.)

Plaintiff asserts a claim for unjust enrichment, arguing that "Defendants [] engaged in unlawful collection activities" and collected unauthorized fees related to the foreclosure.  (doc. 9 at 13.)  "By engaging in an unlawful course of conduct," she claims, "Defendants [] obtained a benefit from Plaintiff by fraud, duress, or the taking of an undue advantage."  (*Id.* at 14.)  She "seeks

restitution and reimbursement of all proceeds that Defendants [] unlawfully obtained."  (*Id.*)

Although the law is somewhat unsettled, numerous courts, including the Texas Supreme Court and the Fifth Circuit, have recognized claims for unjust enrichment as independent causes of action. *See e.g., Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action.") (citation omitted).  A plaintiff may recover for unjust enrichment if the defendant "has obtained a benefit from [him] by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  In essence, an unjust enrichment claim "characterize[s] the result of the [defendant's] failure to make restitution of benefits under such circumstances as to give rise to an implied or quasi-contract to repay." *Coleman v. Bank of New York Mellon*, No. 3:12-CV-04783-M-BH, 2013 WL 4761111, at *14 (N.D. Tex. Sept. 4, 2013) (citations omitted) (alterations in *Coleman*).  Nevertheless, "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute."  *Merryman*, 2013 WL 497883, at *6 (citation omitted).  Because an express contract, i.e., the deed of trust, governs the subject matter in this case, Plaintiff's claim for unjust enrichment against Defendants fails and should be dismissed.  *See Bircher v. Bank of New York Mellon,* 4:12–CV–171–Y, 2012 WL 3245991, at *6 (N.D. Tex. Aug.9, 2012) (holding that "[t]he deed of trust and note preclude[d] a cause of action against [the foreclosing] Defendants for unjust enrichment") (citations omitted).

## M.   <u>Accounting</u>

As noted, Defendants move to dismiss the entire complaint as being factually unsupported.

(doc. 18 at 11–12.)

Plaintiff requests "an accounting of all transactions on [her] mortgage."  (doc. 9 at 21.)

"An accounting is sought in equity, and 'is proper when the facts and accounts presented are

so complex [that] adequate relief may not be obtained at law.'" *Steele v. Green Tree Servicing, LLC*,

No. 3:09-CV-0603-D, 2010 WL 3565415, at *8 (N.D. Tex. Sept. 7, 2010) (Fitzwater, C.J.), *aff'd*,

453 F. App'x 473 (5th Cir. 2011) (quoting *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners*

*Ass'n*, 79 S.W.3d 712, 717 (Tex. App. —Houston [14th Dist.] 2002, pet. denied)). "[I]f the party can

obtain similar relief through standard discovery, the trial court may decline to order an accounting."

*Id.*  Here, Plaintiff does not state the basis for her request for an accounting.  Ultimately, since she

can obtain the accounting statements through discovery, this request should be dismissed.

**N.**     **Declaratory Judgment**

Defendants argue that "Plaintiff is not entitled to declaratory relief because" her amended

complaint "fails to state a claim for relief on any of her underlying claims."  (doc. 18 at 29.)

Plaintiff seeks declaratory relief under the Texas Declaratory Judgments Act, codified in

§§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.   (*See* doc. 9 at 21.)  "The Texas

act is a procedural, rather than substantive, provision, and would generally not apply to a removed

action such as this one." *Brock v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 620550, at *5 (N.D. Tex. Feb.

24, 2012) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).  However,

in light of removal from state court, the action may be construed as one brought under the federal

Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan*

*Servicing LP*, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen a declaratory

judgment action is filed in state court and is subsequently removed to federal court, it is converted

to one brought under the federal Declaratory Judgment Act").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The federal Declaratory Judgment Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse declaratory judgment.  *Id.*

Here, Plaintiff seeks declarations that Defendants: (1) lacked standing to foreclose; (2) "materially breached" the Consent Judgment and the deed of trust; and (3) have "unclean hands."[16] (doc. 9 at 20–21.)  Her requested declaration that Defendants lacked authority to foreclose is based on her invalid "split-the-note" and "show-me-the-note" theories.  This request should therefore be dismissed.    In addition, she lacks third-party standing to enforce the Consent Judgment.

---

[16]  Plaintiff alleges that "Defendants do not have clean hands" because they "deceptively foreclosed upon [the] Property," and they did not provide her with the notices "required by Texas state and federal law."  (doc. 9 at 20–21.)  Although Defendants have not asserted any claims against Plaintiff, her purported "unclean hands" defense may be properly considered because the deed of trust expressly provided that Borrower had "the right to bring a court action to assert the non-existence of a default or any other defense [] to acceleration and [foreclosure] sale." *See Benavides*, 2013 WL 416195, at *5 (addressing the plaintiffs' equitable defenses on the merits because "the deed of trust explicitly [gave] [them] 'the right to bring a court action to assert the nonexistence of a default or any other defense . . . to acceleration and sale'"); *Nolasco v. CitiMortgage, Inc.*, No. H–12–1875, 2012 WL 3648414, at *5 (S.D. Tex. Aug. 23, 2012) (same); (*see also* doc. 9-1 at 10, ¶ 22).  Other courts have taken a different approach, however.  In *Blakeney v. Wells Fargo Bank, N.A.*, No. CIV.A. H-12-0845, 2012 WL 6691122, at *7 (S.D. Tex. Dec. 21, 2012), for example, the court refused to entertain the plaintiff's equitable defenses, finding that they were "not properly before the court" because "[n]one of the Defendants ha[d] brought a suit in court alleging a claim for relief" against him.

Accordingly, her requested declaration regarding the Consent Judgment should also be dismissed.

Nevertheless, her requested declaration that Defendants "breached the deed of trust" is based on her viable breach of contract claim. Likewise, the requested declaration that Defendants have "unclean hands" is also based in part on her plausible claim that Defendants failed to send her the requisite notices of default, opportunity to cure, and intent to accelerate. (*See* doc. 9 at 20–21.) Accordingly, these requests for declaratory relief should be allowed to proceed.

## IV.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give pro se plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow pro se plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A pro se plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*,

188 F.3d 322, 327 (5th Cir. 1999).

Plaintiff amended her complaint after Defendants filed their first motion to dismiss.  (doc. 9.)  Her allegations in the first amended complaint that MERS's assignment was ineffective and that Defendants could not foreclose because they did not own or hold the note are premised on invalid legal theories.  These allegations appear to be the basis for her claims for unjust enrichment, common law fraud, suit to quiet title, and trespass to try title.  In addition, she lacks standing to enforce the Consent Judgment.  She cannot state a negligence claim against Defendants as a matter of law because they owed her no legal duties beyond their contractual obligations.  Her factual contentions also fail to raise a reasonable inference that Defendants engaged in any misrepresentation or deception in relation to the foreclosure that could support her claims for negligent misrepresentation or for violations of §§ 392.304(a)(8),(19) of the TDCPA.  Lastly, her RESPA claim is factually unsupported because she fails to state she suffered any damages.  It therefore appears that she has pled her best case to the Court with respect to these claims, and no further opportunity to amend to reassert them is warranted.  Notably, Plaintiff does state plausible claims for breach of contract and wrongful foreclosure based on Defendants' purported failure to send her notices of default, opportunity to cure, and intent to accelerate as required by the deed of trust and the Texas Property Code.  She also states plausible claims that Defendants violated §§ 392.301(a)(8), 392.001, and 392.303(a)(2) of the TDCPA by failing to post the requisite bond before engaging in debt collection and by charging her unauthorized fees.  It has been recommended that these claims be allowed to proceed.

## V.  RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED in part,** and **DENIED in part.**

Plaintiff's claims for negligence, negligent misrepresentation, common law fraud, suit to quiet title, trespass to try title, unjust enrichment, and violations of the DTPA, RESPA, and §§ 392.304(a)(8),(19) of the TDCPA should be **DISMISSED with prejudice.**  Her requests for a declaration that Defendants lacked authority to foreclose and for an accounting should also be **DISMISSED with prejudice.**   Her wrongful foreclosure claim, her breach of contract claim, and her TDCPA claims under §§ 392.301(a)(8) and 392.001 for failure to pay the requisite bond and § 392.303(a)(2) for charging unauthorized fees should be allowed to proceed.

   **SO RECOMMENDED** on this 19th day of February 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE