## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JEAN LOMBARDI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-1464-O |
| | § | |
| BANK OF AMERICA, et al., | § | |
| | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated May 14, 2013, this case was referred for pretrial management. Before the Court is *Defendants' Second Motion for Summary Judgment*, filed March 26, 2015 (doc. 123)[1]. Based on the relevant filings and applicable law, the motion for summary judgment should be **GRANTED.**

### I. BACKGROUND

On March 4, 2013, Jean Lombardi (Plaintiff) sued Bank of America, N.A. (BOA ) and the Bank of New York Mellon f/k/a the Bank of New York, as Trustee for the Certificate Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-12 (BONY) (collectively, Defendants) in state court for claims arising out of the foreclosure of her home located at 16106 Chalfont Circle, Dallas, Texas 75248 (the Property). (doc. 1-3 at 2.)[2] Defendants removed the action to federal court on the basis of diversity jurisdiction on April 15, 2013. (doc. 1 at 2-3.) On May 11, 2013, Plaintiff filed a first amended complaint. (doc. 9.)

---

[1] On May 5, 2015, Intervenor EMI & WICK LLC (Intervenor) joined in and adopted Defendants' second motion for summary judgment along with its brief, appendix in support, and reply briefs. (doc. 132.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

A.      **Factual Background**

Plaintiff purchased the Property on or about October 21, 2004, with a loan for $288,000.00 from America's Wholesale Lender (AWL).  (doc. 9 at 3; doc. 125 at 3.)  She executed a promissory note and a deed of trust securing the note.[3]  (doc. 125 at 5-25.)  The note and deed of trust named AWL as "Lender" and Plaintiff as "Borrower."  (doc. 125 at 5, 7, 8.)  The deed of trust designated Mortgage Electronic Registration Systems, Inc. (MERS), as the nominee for the lender and its successors and assigns and as the beneficiary under the deed of trust.  (*Id.* at 9, ¶ E.)

Between 2006 and 2009, Plaintiff encountered financial difficulties and "participated in one repayment plan and three separate loan modifications."  (doc. 9 at 3.)  On May 3, 2011, BOA (the mortgage servicer) sent Plaintiff a notice informing her that (1) her loan was in default; (2) she had to cure the default in order to avoid acceleration of her loan payments by paying $4,256.07 plus any additional regular monthly payments, late charges, or fees which became due on or before June 2, 2011; (3) she had the right to cure the default after acceleration; and (4) she had the right to bring a court action to assert a defense to acceleration and foreclosure (the May 3, 2011 Default Notice). (doc. 125 at 37.)  In June 2011, BOA "began notifying" her "of foreclosure proceedings."  (doc. 9 at 3.)  From March through October 2012, she allegedly communicated with a BOA specialist to modify her loan for the fourth time and avoid foreclosure.  (*Id*. at 4-5.)

On May 4, 2012, MERS, as the lender's nominee, assigned the deed of trust to BONY. (doc. 125 at 26-27.)

On May 7, 2012, ReconTrust Company, N.A. (ReconTrust), an entity retained by BOA to

---

[3]  William M. Lombardi also executed the note and deed of trust, but he is not a party in this action.  (*See* doc. 125 at 7,19.)

perform the non-judicial foreclosure of the Property, sent Plaintiff a notice of default and acceleration via certified mail, return receipt requested (the May 7, 2012 Default Notice).  (*Id*. at 41-42, 44.)  The May 7, 2012 Default Notice notified Plaintiff that she had failed to cure the default under the deed of trust because she did not pay the past due balance on her loan, and therefore the maturity of her debt was being accelerated.  (*Id*. at 44.)  The Notice informed her of the amount needed to cure the default and warned her that if the default was not cured, the trustee or substitute trustee would sell the Property at a foreclosure sale.  (*Id*.)

On or about September 26, 2012, ReconTrust sent Plaintiff a Notice of Substitute Trustee's Sale, which informed Plaintiff that the Property would be sold by the substitute trustee at a public sale on November 6, 2012.  (*Id*. at 42, 55.)  The substitute trustee sold the Property to BONY at a foreclosure sale for $291,060.00, on November 6, 2012.  (doc. 125 at 57-60.)

B.   **Procedural History**

The first amended complaint asserts claims for violations of the Real Estate Settlement Practices Act (RESPA), violation of the Texas Property Code, the Texas Debt Collection Practices Act (TDCPA), and the Deceptive Trade Practices Act (DTPA), as well as for breach of contract, unjust enrichment, negligence, negligent misrepresentation, common law fraud, suit to quiet title, and trespass to try title.  (doc. 9 at 6–10, 13–21.)  Plaintiff seeks damages, attorney's fees, court costs, an accounting, and declaratory judgment.  (*Id.* at 21–23.)

After Defendants' May 24, 2013 motion to dismiss was granted in part, Plaintiff's claims for negligence, negligent misrepresentation, common law fraud, suit to quiet title, trespass to try title, unjust enrichment, violations of the DTPA, RESPA, and §§ 392.304(a)(8) and (19) of the TDCPA were dismissed with prejudice.  (doc. 45.)  Her requests for declaratory judgment regarding

Defendants' lack of authority to foreclose on the Property and Defendants' breach of a consent judgment as well as her request for an accounting were also dismissed with prejudice. (*See* docs. 43, 45.) Remaining were Plaintiff's TDCPA claims under § 392.301(a)(8) and § 392.303(a)(2) for failure to pay the requisite bond and for charging unauthorized fees, her claim for breach of contract, and her claim for violation of the Texas Property Code, which was construed by the Court as a wrongful foreclosure claim. (*See* docs. 43 at 41; 45.) Also remaining were her requests for declarations that Defendants "breached the deed of trust" and that they have "unclean hands". (*See* doc. 43 at 39.)

Defendants filed a motion for summary judgment as to the remaining claims on June 20, 2014. (*See* doc. 50. ) It was recommended that all claims except for Plaintiff's wrongful foreclosure claim and her requested declaration that Defendants have "unclean hands" be dismissed. (*See* doc. 111.) Despite her failure to previously object to the Court's construction of her claim for violation of the Texas Property Code as a claim for wrongful foreclosure, Plaintiff clarified in her objections to the recommendation that she intended to allege a claim for violation of Section 51.002(b) and (d) of the Texas Property Code as opposed to a claim for wrongful foreclosure. (*See* doc. 115.) Therefore, Defendants were granted leave to file a second motion for summary judgment regarding Plaintiff's claim for violation of Section 51.002(d)[4] and her request for a declaration that Defendants have "unclean hands," which is based, in part, on her allegation regarding the violation of Section 51.002(d). (*See* doc. 120 at 5-8.) Plaintiff's claims for breach of contract, her TDCPA claims under § 392.301(a)(8) and § 392.303(a)(2), and her request for a declaration that Defendants breached the

---

[4]Plaintiff's claim for violation of Section 51.002(b) had been previously dismissed as the Court found that Plaintiff failed to raise a reasonable inference that Defendants did not send her a notice of foreclosure, as they were required to do under Texas Property Code § 51.002(b). (*See* doc. 45.)

deed of trust were dismissed.  (*Id*. at 7-8.)  On March 26, 2015, Defendants filed their second motion for summary judgment as to Plaintiff's claim for violation of Section 51.002(d) of the Texas Property Code and her request for a declaration that Defendants have "unclean hands."  (doc. 123.) On May 5, 2015, Intervenor advised the Court that it joined in and adopted Defendants' second motion for summary judgment.

With a timely-filed response (doc. 127) and reply (doc. 130), the motion is now ripe for recommendation.

## II.   DEFENDANTS' AND INTERVENOR'S EVIDENTIARY OBJECTIONS

In their reply to their motion for summary judgment, Defendants and Intervenor object to and move to strike certain exhibits attached to an affidavit offered by Plaintiff in support of her response to the motion for summary judgment.  (doc. 130 at 2-3.)  Because those exhibits, even if considered, do not affect the disposition of the pending motion for summary judgment, Defendants' and Intervenor's objections are **OVERRULED as moot**.  *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n. 6 (N.D.Tex. Apr. 14, 2006 (Fitzwater, J.) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).

## III.   SECOND MOTION FOR SUMMARY JUDGMENT

Defendants and Intervenor move for summary judgment on Plaintiff's claim for violation of Section 51.002(d) and her request for a declaration that Defendants have "unclean hands." (docs. 123, 132.)

### A.      Summary Judgment Standard

Summary judgment is appropriate when the pleadings and evidence on file show that no

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED.R.CIV.P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the non-movant, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the non-movant fails to establish the existence of an element essential

to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998).

**B.      Violation of Texas Property Code § 51.002(d)**

Defendants and Intervenor move for summary judgment on Plaintiff's claim that Defendants violated Section 51.002(d) because she "never received" a notice of default and a right to cure as provided by Section 51.002(d).  (doc. 9 at 9.)

Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. *See* Tex. Prop. Code § 51.002.  It requires the mortgage servicer to provide the debtor with notice of default and to give the debtor an opportunity to cure the default within a minimum of 20 days before notice of sale can be given. *See id.* § 51.002(d).  The Texas Property Code provides that "[s]ervice of a notice under [§ 51.002] by certified mail is complete when the notice is deposited in the [U.S.] mail, postage prepaid and addressed to the debtor at the debtor's last known address." Tex. Prop. Code § 51.002(e).  Pursuant to Section 51.002(e), courts have concluded that constructive notice, as opposed to actual notice, satisfies the notice requirements. *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 856 (5th Cir. 2009) (per curiam); *Munoz v. HSBC Bank USA, N.A.*, No. CIV.A. H-12-0894, 2013 WL 265982, at *7 (S.D. Tex. Jan. 22, 2013).

To show that BOA sent a notice of default and gave Plaintiff an opportunity to cure, Defendants provide the May 3, 2011 Default Notice, which notified her of her default, provided an amount required to cure the default, advised that she must cure the default by June 2, 2011, and

advised that her mortgage payments would be accelerated if she failed to do so. (doc. 125 at 37.) It was addressed to "William M & Jean C Lombardi" at the Property address. (*Id*.) The declaration of Scott A. Horowitz, BOA's Assistant Vice President and Operations Team Manager, states that the May 3, 2011 Default Notice was sent to Plaintiff via regular and certified mail. (*Id*. at 3-4.) Defendants and Intervenor also provide the May 7, 2012 Default Notice sent by ReconTrust on BOA's behalf, which notified Plaintiff that her loan had been accelerated due to her default, provided her with the amount needed to cure the default, and informed her that failure to cure the default would result in sale of the Property. (*Id*. at 44.) It was addressed to "William M & Jean C Lombardi" at the Property address. (*Id*.) The declaration of Janice Bergthold, Senior Vice President of ReconTrust, states that the May 7, 2012 Default Notice was sent via certified mail. (*Id*. at 41-42.) It also states that the Notice of Substitute Trustee's Sale was sent to Plaintiff on September 26, 2012, well over twenty days after the May 7, 2012 Default Notice was sent to her. (*Id*. at 42, 55.)

Defendants' and Intervenor's evidence demonstrates Defendants' compliance with the notice requirements outlined in Section 51.002(d). It shows that BOA gave Plaintiff notice of her default via certified mail to her last known address, and that she received, at the very least, constructive notice of her default. The evidence also shows that BOA gave Plaintiff more than one opportunity to cure her default, and that she had over four months to cure her default after the May 7, 2012 Notice of Default was sent to her before she was given a Notice of Trustee's Sale. (*See id.* at 55.) Defendants and Intervenor have therefore met their summary judgment burden to show that there is no genuine issue of material fact with respect to Plaintiff's claim for violation of Tex. Prop. Code § 51.002(d).

The burden now shifts to Plaintiff to show that there is a genuine issue of material fact with

respect to her claim.  She does not argue in response or provide any evidence that BOA did not send her the Notices of Default.  Therefore, she has failed to identify evidence sufficient to create a genuine issue of material fact as to whether BOA sent her the Notices of Default and therefore whether she received notice of her default and an opportunity to cure.

### 1.   *Failure to Timely Send a Notice of Acceleration*

Plaintiff maintains her prior contention in her response to Defendants' first motion for summary judgment that the required notices under the Texas Property Code were "not timely." (doc. 128 at 11; *see also* doc. 59 at 11 ("Defendants breached the Deed of Trust by failing to timely send a Notice of Acceleration.").)[5]  This argument relates to a breach of the Deed of Trust, not a breach of Section 51.002(d).  Also, Section 51.002(d) does not require that the mortgage servicer send the borrower a notice of acceleration. To the extent Plaintiff is arguing here that both Notices of Default were "not timely," she has failed to provide any evidence in support of her argument. She has failed to identify a genuine issue of fact concerning the existence of a violation of Section 51.002(d) based on timeliness.

### 2.   *Failure to Provide Opportunity to Cure Default*

Plaintiff also argues that BOA did not strictly comply with Section 51.002(d) because the May 3, 2011 Default Notice failed to provide the specific amount of money required for Plaintiff to cure her default, and therefore she had no real opportunity to cure it.  (doc. 128 at 14.)  She contends that the reference in the Notice to the additional monthly payments, late charges, and fees

---

[5]Although Plaintiff alleged in support of her breach of contract claims in her first amended complaint that she did not receive a notice of acceleration, she never alleged that Defendants failed to timely send a notice of acceleration.  (*See* doc. 9 at 10-13.)

that may also become due with the $4,256.07 renders the number effectively meaningless, and there can be no opportunity to cure when Plaintiff was not given the specific amount to cure.[6] (*Id*. at 14-15.)

Defendants and Intervenor argue that Plaintiff's allegation regarding BOA's failure to provide the specific amount to cure her default is a new allegation raised for the first time in her response.   (doc. 130 at 4.)  As a general rule, "[a] claim which is not raised in the complaint, but, rather is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup.'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).  This is because a properly pleaded complaint must give fair notice of what the claim is and the grounds upon which it is based.  *DeFrancheschi v. BAC Home Loans Servicing,  L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012).  "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."  *Id*.  Because Plaintiff did not allege this "new theory of liability" regarding her claim under Section 51.002(d), the Court is not required to consider it.

In any event, Section 51.002(d) contains no requirement that a notice provided under that section state the amount of money needed to cure the default.  *See* Tex. Prop. Code § 51.002(d); *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-cv-02347-L, 2012 WL 5363424, at *19 (N.D.Tex. Oct. 31, 2012), *vacated in part on other grounds*, 3:10-cv-02347-L, 2013 WL 2090307 (N.D. Tex. May 14, 2013) (finding Section 51.002 contains no requirement that a notice of default state the amount

---

[6]Defendants and Intervenor point out in their reply brief that this is not the first time that Plaintiff's counsel has asserted this argument.  (*See* doc. 130 at 4-6.)  Two federal court cases and one Texas case have rejected this argument.  (*Id*.)

of money needed to cure the default); *Buchanan v. Compass Bank*, No. 02-14-0034-cv, 2015 WL 222143, at *3 (Tex. App– Fort Worth Jan. 15, 2015, pet denied); *see also Rabe v. Wells Fargo Bank, N.A.*, No. 4:11-cv-787, 2013 WL 5458068, at *7 (E.D. Tex. Sept. 30, 2013)("There is no applicable statute or regulation that requires a notice of acceleration to state the amount necessary to cure a default.").  Notably, the May 3, 2011 Default Notice did provide the exact amount needed to cure Plaintiff's default as of the date the Notice was written, while also accounting for any additional monthly payments or charges that would become due until the default was cured or the deadline to cure the default passed.[7]  (*See* doc. 125 at 37.)  Plaintiff has provided no evidence that she requested the exact amount needed to cure her default as of a specific date or that BOA or ReconTrust refused to provide it to her such that she was unable to cure the default.  *See Rhodes*, 2012 WL 5363424, at *19 (noting that "there [was] no evidence that Plaintiffs requested or Wells Fargo refused to provide Plaintiffs with information regarding the amount of the balance due under their Note necessary to cure the default" in determining that Plaintiffs failed to raise a genuine dispute of material fact regarding the defendant's alleged failure to comply with Section 51.002(d)).  Plaintiff cannot establish that Defendants violated Section 51.002(d) by failing to provide her with an opportunity to cure.

Plaintiff has failed to meet her burden to show a genuine issue of material fact as to her claim for violation of Section 51.002(d), and Defendants' and Intervenor's second motion for summary judgment as to this claim should be granted.

---

[7]The May 7, 2012 Notice of Default also provided an exact amount needed to cure Plaintiff's default as of the date the notice was written.

D.      **Declaratory Judgment**

Defendants and Intervenor move for summary judgment on Plaintiff's request for a declaration that Defendants have "unclean hands" on the basis that it is based on allegations and claims that have been dismissed or are subject to dismissal.  (doc. 124 at 14-17.)

Plaintiff seeks relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 9 at 21.)  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  In light of removal, the action may be construed as one brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").  The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The federal Declaratory Judgment Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and not a command, and allows federal courts broad, but not

unfettered, discretion to grant or refuse declaratory judgment. *Id.*

Plaintiff's request for a declaration that Defendants have "unclean hands" is based on her claim that Defendants failed to send her the requisite notices of default, opportunity to cure, and intent to accelerate, as well her claim that her loan modification was being reviewed when Defendants deceptively foreclosed on the Property. (*See* doc. 9 at 20-21.) Because all of Plaintiff's claims, including her claims regarding Defendants' alleged promise to modify her loan or postpone the foreclosure sale and Defendants' alleged failure to send her requisite notices, have either been dismissed or are subject to dismissal (*see* docs. 45, 120), Defendants and Intervenor are entitled to summary judgment on this claim. *Thompson v. Bank of America, N.A.*, 13 F.Supp.3d 636, 660 (N.D. Tex. 2014)(denying request for declaratory judgment based on causes of actions that did not withstand summary judgment); *Sgroe v. Wells Fargo Bank, N.A.*, 941 F.Supp.2d 731, 752 (E.D. Tex. 2013).[8]

## IV.  RECOMMENDATION

Defendants' and Intervenor's second motion for summary judgment should be **GRANTED**, and Plaintiff's remaining claim for violation of Section 51.002(d) of the Texas Property Code and her requested declaration that Defendants have "unclean hands" should be **DISMISSED with prejudice.**

---

[8]Defendants also move for summary judgment as to Plaintiff's wrongful foreclosure claim "to the extent the Court determines Plaintiff has asserted a claim for wrongful foreclosure."  (doc. 124 at 11-12.)  It is unnecessary to consider this argument as the Court has dismissed any wrongful foreclosure asserted by Plaintiff and has also accepted Plaintiff's clarification that she intended to allege a claim for violation of Section 51.002 of the Texas Property Code as opposed to a wrongful foreclosure claim.  (*See* doc. 120 at 5.)

**SO RECOMMENDED** on this 19th day of October 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14